

FILED

February 26, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

1:13 P.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **TERRY CHASE,** | ) | **Docket No. 2016-07-0325** |
| Employee, | ) | |
| v. | ) | |
| **BILLY ROGERS PLUMBING,** | ) | |
| **HEATING & AIR CONDITIONING,** | ) | **State File No. 22905-2017** |
| a/k/a **BILLY ROGERS PLUMBING, INC.** | ) | |
| Employer, | ) | |
| and | ) | |
| **ERIE INS. CO.,** | ) | **Judge Allen Phillips** |
| Carrier. | ) | |

---

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

Mr. Chase requested medical and temporary disability benefits for an injury occurring on March 29, 2017. Billy Rogers Plumbing (Rogers) asserted an affirmative defense that Mr. Chase intentionally violated a safety rule and denied his claim. The Court heard the disputed issues at an Expedited Hearing on February 1, 2018, and holds Mr. Chase likely would not prevail at a hearing on the merits because Rogers established the required elements of its affirmative defense.

### History of Claim

Mr. Chase worked for Rogers as a plumbing helper. On March 29, he suffered an injury when a trench where Rogers' employees were laying pipe collapsed. Rogers contended Mr. Chase entered the trench contrary to a direct order not to do so, triggering the willful misconduct defense of Tennessee Code Annotated section 50-6-110.

In support of its position, Rogers offered the testimony of three co-employees who said they were told not to enter the trench until the placement of a trench box, a steel structure designed to protect workers in the event of a collapse. Barry Mount was a co-

1

employee who sometimes served as a supervisor. He testified that on March 29, the employees found the five- to six-feet-deep trench collapsed overnight and that the soil in general was "nasty, wet, and sloppy." He said a trench box was at the site, but they could not place it because of an exposed gas line lying in the path of the excavation. However, Mr. Mount also said the employees could both spread gravel and lay pipe while standing above the trench. Mr. Mount said he stated to "everybody in general" that, "we don't need to be in the ditch," and that he knew of no reason Mr. Chase could not have heard him. He said Thomas Sandlin, Rogers' site supervisor, and Bryan Parkhill, the general contractor's superintendent, also told the employees not to enter the trench.

Chris Hawks confirmed the soil was "saturated" and the trench had "caved-in." He expressed his belief that morning that the employees would need to re-excavate the trench and place the box before anyone could safely enter the trench. On March 29, he and fellow employee Fred Webb were to "rig" the trench box for placement. He recalled Mr. Mount and Mr. Sandlin telling everyone to stay out of the trench and that all employees were in the "same area" when the men said it, leaving him no reason to think Mr. Chase "would not have heard" their instruction.

Fred Webb testified by deposition that he worked for Rogers "just when they need me." He said the employees encountered difficulties with the "ditch caving in," but he and Mr. Chase were in the ditch spreading gravel as recently as the day before. On March 29, Mr. Webb saw Mr. Sandlin dump a load of gravel into the trench with a backhoe. He then saw Mr. Chase throw a shovel into the ditch to spread the gravel but heard Mr. Sandlin say, "don't anybody get in the ditch until we get the trench box set up." Mr. Webb said Mr. Chase and Mr. Hawks were "right beside me" when Mr. Sandlin made the statement. Mr. Webb was assisting Mr. Hawks rig the trench box when he heard Mr. Chase yell, "get it off me!" He went to the trench and found it had caved in on Mr. Chase, pinning his left leg against the gas line. Mr. Webb noted Mr. Chase was "high-tempered" and disobeyed orders in the past. He said he "hate[d] to see anybody get hurt but if you don't pay attention . . . ." [verbatim]

Thomas Sandlin testified by deposition that he was Rogers' supervisor at the job site.[1] On March 29, he and Mr. Mount had a conversation, out of earshot of the other employees, regarding placement of the trench box. He "talked . . . the day before about [the trench] being bad and, you know, we didn't want anybody—we were going to use the trench box . . . ." After talking with Mr. Mount, he "sprinkled" a load of gravel into the trench with a backhoe. While retrieving more gravel, he saw Mr. Parkhill approach Mr. Chase and make "some smart-ass comment to [Mr. Chase]." (He later testified that he did not "hear it and I didn't know what [Parkhill] said.") Mr. Parkhill then approached

---

[1] Mr. Sandlin appeared at the hearing but explained he had suffered a stroke. The parties agreed to use his earlier deposition testimony instead of his live testimony, and the Court agreed this was proper because of his "then existing physical . . .infirmity." Tenn. R. Evid. 804(a)(4) (2017).

Mr. Sandlin and stated he did not want anyone in the trench until placement of the trench box. Mr. Sandlin then shouted a warning from his backhoe to Mr. Chase not to enter the trench, to which Mr. Chase replied by "waving his hand." Mr. Sandlin did not know if Mr. Chase heard the instruction or not. Rogers terminated Mr. Sandlin because of his disagreements with and behavior towards Mr. Parkhill. Mr. Sandlin said he and Mr. Chase socialized in the past.

Mr. Parkhill confirmed in a sworn declaration that he was the general superintendent at the site. He said poor soil conditions required the placement of a trench box and that he "said to the workers that no one should get down into the ditch until the trench box was in place." He added that Mr. Chase was "standing right there with me when I made these [sic] statements."

Billy Rogers, the owner, testified that safety is a top priority of the company and that all employees attend safety classes taught by an "outside vendor." Mr. Rogers said he did not distribute a "safety manual" to employees, but they "can look at it" in the office and the company discussed "portions" of the manual at meetings. He offered a roster of employees, including Mr. Chase, who attended a safety meeting on February 26, 2016, that included "Excavations and Trenching." Mr. Rogers visited Mr. Chase following the accident. He said Mr. Chase acknowledged he went "in the ditch knowing he was not supposed to."

For his part, Mr. Chase disputed that anyone told him not to enter the trench. He specifically denied hearing any instruction to stay out of it, including the one Mr. Sandlin allegedly yelled immediately before the accident. He further denied receiving any training or safety materials from Rogers regarding trench work. He said he never worked in a trench as deep as the one that collapsed on him and that he was never on a job requiring a trench box. However, he knew the "cave-ins" and the planned trench box placement indicated an obvious danger. He maintained that his job required him to enter the trench to spread gravel, but he would not have done so if he were instructed not to enter it. However, he did respond to questioning by his counsel as follows: "was it your understanding in any way, shape or form for you not to physically get in it to spread that gravel?" to which he responded after hesitation, "maybe."

Mr. Chase received treatment from Dr. Michael Bebee including repair of comminuted fractures of the left leg. He continued treating with Dr. Bebee as of the hearing date. Mr. Chase introduced substantial unpaid medical bills and testified he has not worked since the date of the injury. Dr. Bebee noted Mr. Chase "might return to work as comfortable" as of July 25.

Mr. Chase requested payment of his medical bills, temporary total disability from the date of injury to present and ongoing, as well as ongoing medical benefits. His

attorney requested fees for Rogers' alleged wrongful denial of the claim and a fee based upon a percentage of the contested medical bills.

### Findings of Fact and Conclusions of Law

*Standard Applied*

Mr. Chase must establish that he suffered an injury arising primarily out of and in the course and scope of his employment caused by a specific incident. Tenn. Code Ann. § 50-6-102(14)(A). At this Expedited Hearing, he must come forward with sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2017).

*Analysis*

The Court finds Mr. Chase came forward with sufficient evidence to show he likely would prevail in establishing an injury arising out of his employment caused by the trench collapse. However, the dispositive issue is whether Rogers carried its burden in establishing the required elements of its affirmative defense that "no compensation shall be allowed for an injury . . . due to the employee's willful misconduct." Tenn. Code Ann. § 50-6-110(a)(1) and 110(b). To succeed, it must establish:

1) Mr. Chase's actual, as opposed to constructive, notice of the rule violated;
2) Mr. Chase's understanding of the danger involved in violating the rule;
3) Rogers' bona fide enforcement of the rule; and
4) Mr. Chase's lack of a valid excuse for violating the rule.

*Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012). For the following reasons, the Court finds Rogers carried its burden.

First, Rogers established the existence of a rule and that Mr. Chase had actual knowledge of it. Specifically, the Court finds Rogers instructed Mr. Chase, through Mr. Sandlin and Mr. Parkhill, not to enter the trench on the day of the incident. Though given on only one occasion, the Court finds in this context that the instruction of March 29 suffices as a "rule" for purposes of section 50-6-110.

In so finding, the Court considers that three co-employees confirmed hearing Mr. Sandlin tell them not to enter the trench. This collective testimony is more compelling than Mr. Sandlin's recollection that he only yelled this instruction from a running backhoe just before the collapse. The three co-employees were consistent in their testimony that Mr. Sandlin not only told them to stay out of the trench but also in their descriptions of the proximity of all of the men to each other when he said it.

4

Moreover, Mr. Webb notably testified that Mr. Chase disobeyed other orders and that it was disobedience that led to this injury. The Court notes Mr. Webb's sporadic work for Rogers militates against any bias in its favor. Conversely, Mr. Sandlin left Rogers on less-than-favorable terms, and he and Mr. Chase have some social relationship. Further, the Court notes Mr. Sandlin conceded he did not know what Mr. Parkhill said to Mr. Chase the morning of the incident. Finally, Mr. Chase was not self-assured when testifying on his own behalf, and he hesitated while replying "maybe" when asked if he was told not to enter the trench.

The Court contrasts this finding with that of *Scarbrough v. Right Way Recycling, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 9, at *15 (Apr. 20, 2015), where the Appeals Board "decline[d] to address whether oral statements 'on one or two occasions' can establish a safety rule," but nevertheless affirmed the trial court's finding that no rule existed because the employer had not conveyed it to the employee in any way. *Id.* Here, Rogers did convey the rule.

Second, the Court finds Mr. Chase understood the danger of entering the trench. He was aware that the trench caved in on more than one occasion and knew Rogers planned to use a trench box due to safety concerns.

The Court finds the third element of bona fide enforcement of the rule does not apply. The evidence established that Rogers had not used a trench box before; thus, it could not have enforced the rule in the past. However, Mr. Rogers testified that the company reprimanded Mr. Chase via a certified letter.

Finally, the Court finds no valid excuse for Mr. Chase to have entered the trench. He testified he entered it to spread gravel, a task required as part of his job. However, the Court found that Rogers gave Mr. Chase a directive not to perform the action at issue.

Therefore, the Court holds Rogers established the required elements of its affirmative defense of willful misconduct. Because of this holding, the Court need not address the other issues.

**IT IS, THEREFORE, ORDERED** as follows:

1. The Court denies Mr. Chase's request for benefits at this time.

2. This matter is set for a Status Hearing on **Tuesday, April 3, 2018, at 9:30 a.m. Central time. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

5

**ENTERED** this the 26th day of February, 2018.

_____
**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. First Report of Injury
2. Wage Statement
3. Notice of Denial
4. Deposition of Thomas Sandlin
5. Medical records and billing
6. Sworn Declaration of Bryan Parkhill
7. Sworn Declaration of Barry Mount
8. Sworn Declaration of Chris Hawks
9. Sworn Declaration of Dewayne Webb
10. Sworn Declaration of Billy Rogers
11. Deposition of Fred Webb
12. Rogers' "President's Letter" regarding safety
13. Rogers' Management and Commitment and Involvement Policy Statement
14. Trenching Safety Regulations
15. Photograph of trench box
16. Safety Training Roster
17. Spreadsheet with names of Rogers' employees undergoing training
18. Safety course outline

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Expedited Hearing Submission
5. Employee's Pre-Hearing Brief

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 26th day of February, 2018.

| Name | Via   Email | Service Sent To: |
|------|-------------|------------------|
| Monica R. Rejaei, Esq., Attorney for Employee | X | mrejaei@nstlaw.com |
| Catherine C. Dugan, Esq., Attorney for Employer | X | cate@petersonwhite.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**